**Not for Publication**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FIRST RESPONSE d/b/a AMERICARE AMBULANCE; FABRIZIO BIVONA, | |
| *Plaintiffs*, | Civil Action No. 21-01458 |
| v. | **OPINION** |
| STATE of NEW JERSEY; THOMAS HENDRICKSON; DANIEL KAZAR; & CHRISTOPHER NEUWIRTH, | |
| *Defendants*. | |

**John Michael Vazquez, U.S.D.J.**

In this case, Plaintiffs, First Response d/b/a Americare Ambulance ("Americare") and

Fabrizio Bivona (collectively "Plaintiffs") have filed suit under 42 U.S.C. § 1983 against, among

others, the State of New Jersey and Daniel Kazar, an investigator for the Office of Emergency

Medical Services ("OEMS"), which is a division of the New Jersey Department of Health

("DOH") (collectively "the State Defendants"). D.E. 1. Plaintiffs allege that Defendants violated

their constitutional rights when they suspended Plaintiffs' license to operate an ambulance

business. There are parallel proceedings in both the New Jersey Office of Administrative Law and

the Superior Court of New Jersey. The State Defendants have moved to dismiss the action under

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). D.E. 15. The Court has reviewed the

parties' submissions[1] and decides the motion without oral argument pursuant to Federal Rule of

---

[1] Plaintiffs' Complaint will be referred to as "Compl." (D.E. 1); the State Defendants' brief in
support of their motion to dismiss will be referred to as "Defs.' Br." (D.E. 15-1); Plaintiffs'

Civil Procedure 78 and Local Civil Rule 78.1(b).  For the following reasons, the State Defendants'

motion is **granted**.

I.      **BACKGROUND**[2]

On January 30, 2018, Senior Investigator Thomas Hendrickson and Kazar conducted an

audit and inspection of Bivona's ambulance business, Americare.  Compl. at 8.[3]  The process took

more than three-and-a-half hours, and included reviews of the business's equipment, vehicles,

documents, supplies, and other materials.  *Id*.  On February 12, 2018, Hendrickson conducted a

follow-up inspection and audit; Americare fully cooperated on both occasions.  *Id.*

Plaintiffs were not contacted regarding the results of these inspections until June 2, 2018,

when they received a letter from the DOH stating that it had start an action to summarily suspend

Americare's license to operate an ambulance business.  *Id.* at 8-9.  Based on the dating of the letter,

Plaintiffs indicate that there was nefarious intent on the DOH's part.  *See id.* at 9.  The letter was

signed by Scot Phelps, the Director of the OEMS, and was dated May 17, 2018.  *Id.*  However, the

United States Postal Service ("USPS") stamp of receipt from the OEMS was dated May 30, 2018,

and Plaintiffs did not receive the letter until June 2, 2018.  *Id.*  Plaintiffs allege that Defendants

acted in bad faith as they intentionally misdated the letter and withheld it from May 17, 2018,

through May 30, 2018, before delivering it to the USPS.  *Id.*  Plaintiffs contend that the DOH acted

---

opposition to the State Defendants' motion will be referred to as "Plfs. Opp." (D.E. 20); and the
State Defendants' reply will be referred to as "Defs.' Reply" (D.E. 21).

[2] The factual background is taken from Plaintiffs' Complaint.  D.E. 1.  When reviewing a motion
to dismiss, a court accepts as true all well-pleaded facts in the complaint.  *Fowler v. UPMC
Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[3] Plaintiffs' Complaint was initially filed *pro se* and is not set forth in numbered paragraphs.
Citations to page numbers in the Complaint correspond to the page numbers assigned by the
Court's electronic filing system.

in such a way so that Americare would be found guilty of failing to adhere to the suspension of their license from May 17, 2018, through June 2, 2018. *Id.*

Plaintiffs further allege that Christopher Neuwirth, Kazar, and Hendrickson have conflicts of interest, evidenced by reports in the media and disclosures obtained from open sources and discovery responses. *Id.* at 10. Plaintiffs add that Hendrickson committed various acts of misconduct throughout the investigation such as stealing items from Americare, tampering with evidence, and creating unauthorized reports. *Id.* at 11-14. Consequently, Plaintiffs contend that they were deprived of property and due process rights because Hendrickson stole items that they needed to vindicate themselves and because the DOH knowingly used false and misrepresented information to summarily revoke and suspend Plaintiff's license on an expedited basis, without following the standard procedures applied to other ambulance companies. *Id.* at 13.

The DOH withdrew the suspension on February 12, 2019. *Id.* at 11. Plaintiffs infer that the entire process was malicious because Defendants fully vindicated Americare after failing to identify a single violation, despite what Plaintiffs call "an unprecedented number of inspections[]" and contacts between Americare and New Jersey officials. *Id.*

On May 30, 2019, the DOH again suspended Americare's license. *Id.* at 7. Plaintiffs filed suit in the New Jersey Superior Court, bringing civil rights claims under the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2, and 42 U.S.C. § 1983 against the DOH and several individuals (not parties to this action), alleging that the investigations as well as the license suspension and revocation violated their due process rights. *See* D.E. 15-4 at 1-19 (New Jersey Superior Court order and opinion dismissing suit without prejudice pending outcome of administrative proceedings, *Americare Emergency Med. Servs., Inc. v. New Jersey*, No. ESX-L-2397-19 (N.J. Super. Ct. Law Div. Dec. 14, 2021)).

The trial court granted temporary injunctive relief for Americare by lifting the summary suspension and requiring the defendants to re-inspect Americare's vehicles that had been taken out of service. *Id.* at 11. The defendants appealed and in a reported decision, the Appellate Division overturned the injunction. *AmeriCare Emergency Med. Servs., Inc. v. City of Orange*, 233 A.3d 602 (N.J. Super. Ct. App. Div. 2020), *certif. denied*, 241 A.3d 1057 (N.J. 2020), *cert. denied sub nom. Americare Emergency Med. Servs., Inc. v. N.J. Off. of Emergency Med. Servs.*, -- U.S. --, 142 S. Ct. 84 (2021).

Either while the matter was pending in the Appellate Division or shortly after the appellate court issued its decision, Americare initiated an action in the New Jersey Office of Administrative Law ("OAL") seeking review of the decision to suspend its license. *See* D.E. 15-4 at 14-15. Once the matter returned to the trial court, Americare amended its complaint to bring claims for tortious interference with contract and interference with prospective economic advantage. *Id.* at 12. The defendants moved for dismissal; on December 14, 2021, the trial court dismissed Americare's civil rights claims with prejudice and Americare's tort claims with leave to refile them once Americare exhausted its administrative remedies in the OAL. *Id.* at 16-19.

On February 5, 2021, Plaintiffs filed a *pro se* Complaint in this Court. D.E. 1. Plaintiffs' counsel appeared on April 23, 2021. D.E. 23. Plaintiffs indicated on December 14, 2021, that they effectuated service on Defendants. D.E. 8; D.E. 9; D.E. 10. The State Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on February 4, 2022. D.E. 15. The remaining Defendants have not appeared. Plaintiffs filed opposition to the motion, to which the State Defendants replied. D.E. 20; D.E. 21.

II.     STANDARD OF REVIEW

A.  Federal Rule of Civil Procedure 12(b)(1)

In deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because that distinction determines how the pleading is reviewed. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "A facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). When a defendant does "not challenge the validity of any of the Plaintiffs' factual claims as part of its motion, it has brought . . . a facial challenge." *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017).

The State Defendants assert the defense of sovereign immunity through their motion to dismiss "before [they] filed any answer to the Complaint or otherwise presented competing facts[,]" which renders it a facial attack. *Const. Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). As a result, "the court must only consider the allegations of the complaint and documents referenced therein . . . in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  A motion to dismiss based upon sovereign immunity is properly brought pursuant to Rule 12(b)(1) because sovereign immunity implicates the Court's subject matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("[T]he

Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)).

### B. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler*, 578 F.3d at 210-211. Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).[4]

---

[4] In deciding this motion, the Court considers the records of the proceedings in the OAL and the New Jersey courts because they were referenced in the Complaint and are public records. Fed. R. Civ. P. 10(c); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). Plaintiffs also attached numerous exhibits to their opposition. *See, e.g.*, D.E. 20 at 133-230 (attaching photos apparently taken during investigations). The Court does not consider these documents because they were not attached to the Complaint nor were they integral to it. *See Sands*, 502 F.3d at 268.

III.    ANALYSIS

### A.  Eleventh Amendment Immunity & "Person" under Section 1983

The State Defendants first contend that this Court lacks subject matter jurisdiction to hear claims against the State of New Jersey and Kazar in his official capacity for money damages because of the Eleventh Amendment.  Defs. Br. at 8-9.  Non-consenting states are immune from direct suits for monetary damages under the Eleventh Amendment.  *See Pennhurst*, 465 U.S. at 99-100.  Further, that immunity extends to "entities that are considered arms of the state" such as state agencies, state departments, and state officials acting in their official capacities.  *See MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001); *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545 (3d Cir. 2007).  There are three exceptions to Eleventh Amendment immunity: "(1) abrogation by an Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law."  *M.A. ex rel. E.S. v. State-Operated Sch. Dist.*, 344 F.3d 335, 345 (3d Cir. 2003).

Plaintiffs contend that the second exception applies since none of the Defendants raised Eleventh Amendment immunity in the state-court proceedings.  Plfs. Opp. at 5.  According to Plaintiffs, the State Defendants have waived their immunity.  *Id.*  But Eleventh Amendment immunity applies only in federal court, not state court.  *Maine v. Thiboutot*, 448 U.S. 1, 9 n.7 (1980).  The State and Kazar have not waived immunity in this Court by failing to raise an immunity that was not available in state court.  *See S.C. ex rel. C.C. v. Deptford Twp. Bd. of Educ*, 248 F. Supp. 2d 368 (D.N.J. 2003).

As for the third exception, Plaintiffs are correct that the Eleventh Amendment does not preclude a federal court from issuing an injunction against a state official who is violating federal

law.  *See* Plfs. Opp. at 23 (citing *Ex parte Young,* 209 U.S. 123 (1908)).  However, claims pursuant

to *Ex parte Young* are generally brought "against state officers in their individual capacities."

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997).  A plaintiff cannot bring a claim

under *Ex parte Young* against a state itself.  *See Pennhurst*, 465 U.S. at 116.  Therefore, to the

extent Plaintiffs seek prospective equitable relief against Kazar in his individual capacity, the

Eleventh Amendment does not stand in their way, and the Court has jurisdiction over those claims.

In sum, the Court agrees with the State Defendants that the Eleventh Amendment bars

Plaintiffs' claims for money damages against the State of New Jersey and Kazar in his official

capacity.  Those claims are dismissed for lack of subject matter jurisdiction.

The State Defendants further argue that Plaintiffs' claims against the State of New Jersey

and Kazar in his official capacity must be dismissed for failure to state a claim because the State

and Kazar in his official capacity are not "persons" under 42 U.S.C. § 1983.  *See* Defs. Br. at 9-

10.  The Court agrees.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that

neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").  To

the extent that the Court did not dismiss Plaintiffs' Section 1983 claims against the State and Kazar

in his official capacity for lack of subject matter of jurisdiction, they are dismissed for failure to

state a claim.

## B. *Younger* Abstention

Next, the State Defendants urge the Court to refrain from hearing the remaining portions

of the case pursuant to the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971).  Defs.

Br. at 10-14.  They argue that the proceedings in the OAL are ongoing quasi-criminal proceedings

in which important interests of the State of New Jersey are implicated and that Plaintiffs can raise

their affirmative claims for relief.  *Id.*  Plaintiffs do not appear to address this argument directly

but assert that "this Court is the last jurisdiction where an unbiased adjudication can occur against the State of New Jersey and its appointees."  Plfs. Opp. at 28.

The *Younger* abstention doctrine "creates a separate and independent judicially created abstention doctrine" regarding a federal court's involvement in certain ongoing state court proceedings.  *Ivy Club v. Edwards*, 943 F.2d 270, 278 (3d Cir. 1991).  Federal courts normally have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).  *Younger* represents an "exception to this general rule."  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).

The Third Circuit has explained that *Younger* only applies in "'three exceptional categories' of proceedings."  *Malhan v. U.S. Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019) (quoting *Sprint*, 571 U.S. at 78-79).  Those categories are, "(1) 'ongoing state criminal prosecutions'; (2) 'certain civil enforcement proceedings'; and (3) 'pending 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'"  *Malhan*, 938 F.3d at 462 (quoting *Sprint*, 571 U.S. at 78-79).  The Third Circuit has instructed that "[a]dministrative proceedings are . . . subject to *Younger* abstention."  *Zahl v. Harper*, 282 F.3d 204, 208 (3d Cir. 2002).

If the Court determines that the proceedings fit into one of those three categories, then the Court proceeds to consider the factors identified in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982).  *Malhan*, 938 F.3d at 462.  Those factors are "(1) whether there are 'ongoing judicial proceeding[s]'; (2) whether those 'proceedings implicate important state interests'; and (3) whether there is 'an adequate opportunity in the state proceeding to raise constitutional challenges.'"  *PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 883 (3d Cir. 2020) (alteration in original) (quoting *Middlesex*, 457 U.S. at 432).

Finally, even if the *Middlesex* factors are satisfied, abstention still may not be appropriate. *Williams v. Gov't of the V.I. Bd. of Med. Exam'rs*, 360 F. App'x 297, 299 (3d Cir. 2010). Even if all the above tests are met, a federal court will still decline to abstain in an exceptional case "where irreparable injury is both great and immediate, where the state law is flagrantly and patently violative of express constitutional prohibitions, or where there is a showing of bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Mitchum v. Foster*, 407 U.S. 225, 230 (1972)). "Abstention is most obviously appropriate in cases where a plaintiff asks a federal court to enjoin some state judicial or quasi-judicial proceeding." *Kaul v. Christie*, 372 F. Supp. 3d 206, 234 (D.N.J. 2019).

The State Defendants urge that the OAL proceedings fit into the second category recognized in *Sprint* because they satisfy the factors that courts use to determine whether civil enforcement proceedings may be treated as quasi-criminal. Defs. Br. at 11-12. When conducting that analysis, courts assess "whether (1) the action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014). Courts "also consider whether the State could have alternatively sought to enforce a parallel criminal statute." *Id. But see Altice USA, Inc. v. N.J. Bd. of Pub. Utils.*, 26 F.4th 571, 578 (3d Cir. 2022) (court may abstain under *Younger* even if there is no criminal analog).

The State Defendants cite *Kaul* as holding that "state licensure revocation matters 'bear hallmarks of a quasi-criminal proceeding' for *Younger* abstention purposes." Defs. Br. at 12 (quoting 372 F. Supp. 3d at 232). In *Kaul*, an anesthesiologist had his license to practice medicine

revoked by the New Jersey State Board of Medical Examiners after he performed surgery on eleven patients without the requisite experience and training.  372 F. Supp. 3d at 215.  Kaul believed that the Board's proceedings against him were a financially and politically motivated sham and sued the Board—along with upwards of forty other defendants—in this District.  *Id.*  The defendants moved to dismiss on many grounds, including *Younger* abstention.  *Id.* at 230.  The court agreed that the license-revocation proceeding was "a civil enforcement proceeding[]" such as to fit into the second category recognized by *Sprint*.  *Id.*  The court reasoned that the State of New Jersey was a party to the proceeding, which started with an investigation and resulted in a complaint.  *Id.*  The purpose of the state proceeding, according to the court in *Kaul*, was to reprimand the party who would later be the plaintiff in federal court—Kaul—for wrongful conduct.  *Id.*  The court concluded that the proceeding was thus sufficiently similar "to a criminal prosecution" to qualify for *Younger* abstention.  *Id.* (citation omitted).

The Court finds *Kaul* persuasive and follows it.  The State revoked Americare's license pursuant to its sovereign police powers.  The State started with investigations into Plaintiffs' operations that were similar to criminal investigations and culminated in formal action against Plaintiffs.  The suspension was at least partially to punish Plaintiffs for what the State Defendants' investigators believed were violations of New Jersey law.

Americare, not the State Defendants, initiated the formal administrative proceedings.  D.E. 15-4 at 14-15.  However, the Third Circuit has found that this does not change the analysis.  In *PDX*, the State of New Jersey accused two companies of misclassifying employees and not paying unemployment taxes.  978 F.3d at 877.  The State sought back taxes and PDX sought review in the OAL.  *Id.*  The Third Circuit explained that the fact that a federal plaintiff seeks review in the OAL "is a mere technical function of New Jersey administrative procedure. . . .  [T]he New Jersey

OAL action was, for *Younger* purposes, commenced by New Jersey in its sovereign capacity." *Id.*
at 883 (internal quotation marks omitted).  The Court follows the Third Circuit's reasoning here.

Finally, even though the State Defendants do not point the Court to a criminal statute they
could have enforced against Plaintiffs, this is not fatal.  *Altice*, 26 F.4th at 578.  As a result, the
Court proceeds to consider the *Middlesex* factors.  *Id.* at 576.  The first factor is met because it
appears that the OAL proceedings are ongoing.  *See* Compl. at 7.  Plaintiffs do not contest this
factor.  Next, the court in *Kaul* found it well established that "New Jersey has a strong interest in
regulating the medical profession and censuring physicians who are a danger to public health and
safety."  372 F. Supp. 3d at 233.  *See also Zahl*, 282 F.3d at 209 ("Other circuits, too, have
recognized the obvious interest states have in regulating the practice of medicine.") (collecting
cases).  Even if Plaintiffs do not practice "medicine" as physicians, their ambulance services are
close enough to the practice of medicine to implicate similar concerns.  In light of the ongoing
COVID-19 pandemic, "the New Jersey [administrative] proceedings implicate important state
interests, particularly during these times of heightened health concerns."  *Id.*

Finally, the Court considers whether Plaintiffs have an adequate opportunity to raise their
affirmative claims.  In *Kaul*, the court declined to abstain under *Younger* on this factor.  372 F.
Supp. 3d at 233-35.  Although the court found that Kaul was able to bring due process claims
against the Board in the administrative proceedings, Kaul could not bring his litany of other federal
claims against the other defendants in that forum.  *Id.* at 233.  The court relied on *Prevost v.
Township of Hazlet*, 159 F. App'x 396 (3d Cir. 2005), which it read as emphasizing three factors:
first, that additional parties had been joined in the federal proceedings who were not party to the
administrative action; second, that the question before the agency was only whether there had been
a violation of state law, and no federal questions were raised there; and third, that the plaintiff in

12

*Prevost* could not obtain the kind of relief he sought from the federal court from the agency. *Kaul*, 372 F. Supp. 3d at 233-34.  The court in *Kaul* had similar concerns, noting that Kaul could not have pressed his antitrust or RICO claims before the agency, and that the agency could not award him the monetary damages or injunctive relief he sought, as the only issue before the agency was Kaul's fitness to hold a medical license.  *Id.* at 234.  Further, Kaul named what he called "the entire 'medico-legal' community" as defendants in the federal action, including former New Jersey Governor Christopher J. Christie, law firms, insurance companies, and even Warren Buffett for his role as Chairman of Berkshire Hathaway, which owns the GEICO insurance company.  *Id.* at 234-35.  None were parties to the agency proceedings.  *Id.*  The court further explained that some of the conduct that served as the basis of Kaul's claims occurred during or after the agency proceedings, which were technically completed before the agency but were still "ongoing" for the sake of *Younger* because Kaul had not exhausted his appeals.  *Id.* at 233-34.

Additionally, the *Kaul* court reasoned that the case was not a strong candidate for *Younger* abstention because although Kaul asked for an order reinstating his license, his primary aim in the federal suit was money damages.  *Id.* at 234.  Kaul had not asked the court to enjoin the administrative proceedings.  *Id.*  On that basis, the court distinguished *Williams*, in which the only defendants were the board and its members; the federal case arose out of occurrences that happened in the administrative action; and Williams sought emergent relief, an injunction, and a court declaration directing the board to adopt rules conforming to the law of the Virgin Islands.  *Id.*at 234-35.  As a result, the *Kaul* court did not abstain.  *Id.* at 235.

This case is different.  First, whereas Kaul named a cohort of defendants, not all of whom had an obvious connection to the suspension of his license, Plaintiffs sue only the State itself and its employees who were directly involved in the underlying investigations.  Second, whereas Kaul

was *pro se*, Plaintiffs have counsel, who also represents them in the state-court proceedings. *Compare* D.E. 20 at 48, *with* D.E. 4.  Third, the bulk of the conduct Plaintiffs complain of occurred before the administrative proceedings began.  Although Plaintiffs assert that "[t]he event is ongoing[,]" the allegations largely detail past events.  *Compare* Compl. at 7, *with id.* at 7-14 (primarily discussing events that occurred in 2018 and 2019).

Relying on *PDX*, the State Defendants argue that Plaintiffs can raise any constitutional challenges before the OAL.  Defs. Br. at 14.  The Court agrees.  *See PDX*, 978 F.3d at 885.  And Plaintiffs have already raised constitutional civil rights challenges in state court identical to those that Plaintiffs advance here.  Those claims have been passed upon by the state trial and appellate courts, who have determined that Plaintiffs can raise those claims before the agency and that "[t]he very essence of" the civil rights claims they advanced in state court "is a collateral attack on agency action."  233 A.3d at 609.

In their opposition, Plaintiffs indicate that their federal Complaint brings not only civil rights claims but one for "interference in contractual relations."  Plf. Opp. at 21.  Plaintiffs, however, do not cite to their Complaint or indicate precisely where in their Complaint they raised this claim.  And "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Pennsylvania ex rel. Zimmerman v. Pepsi Co., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)).  This case further differs from *Kaul* because there are not just ongoing administrative proceedings, but ongoing state-court proceedings.  Even if Plaintiffs would be unable to press their common law claims before the agency, the New Jersey Superior Court has already ruled that Plaintiffs may renew those claims in state court after the agency proceedings are over.  D.E. 15-4

at 5.   The third *Middlesex* factor is therefore satisfied because Plaintiffs can bring their

constitutional challenges before the agency and their common law claims in state court.

This case does not present the "extraordinary circumstances" discussed by *Williams* or the

Supreme Court case the Third Circuit relied on, *Kugler v. Helfant*, 421 U.S. 117, 124-25 (1975).

In *Kugler*, the Supreme Court cautioned federal courts to enjoin state proceedings only when there

is "an extraordinarily pressing need for immediate federal equitable relief[.]" *Id.* at 125.  Following

*Kugler*, the Second Circuit, in another case cited by *Williams*, explained that those extraordinary

circumstances arise

> (1) "when a state statute is flagrantly and patently violative of
> express constitutional prohibitions in every clause, sentence and
> paragraph, and in whatever manner and against whomever an effort
> might be made to apply it"; and (2) "when the state administrative
> agency was incompetent by reason of bias to adjudicate the issues
> pending before it."

*Williams*, 360 F. App'x at 300 (quoting *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191,

201 (2d Cir. 2002)).  As to the second scenario, the agency's bias must equate to a due process

violation. *Williams*, 360 F. App'x at 300.  Neither circumstance has been shown here, except for

Plaintiffs' conclusory allegation.  Plfs. Opp. at 28 ("[T]his Court is the last jurisdiction where an

unbiased adjudication can occur against the State of New Jersey and its appointees.").

Finally, comity between state and federal judicial systems is one of the primary

considerations behind the *Younger* abstention doctrine.  *PDX*, 978 F.3d at 882; *Zahl*, 282 F.3d at

210.  Plaintiffs filed suit in this Court in February 2021, but then took no further action on the

docket—other than to retain counsel in compliance with this Court's text order--until December

2021, when the state trial court, following the Appellate Division's remand, dismissed the civil

rights claims as duplicative of the agency proceedings and ordered Plaintiffs to wait to prosecute

their tort claims. *Compare* D.E. 1, *with* D.E. 8, D.E. 9, *and* D.E. 10.  Thus, Plaintiffs' impetus in

moving this matter appears to have been that adverse ruling in state court.  Unlike *Kaul*, where the plaintiff's primary goal in the federal case was a monetary judgment, orders restoring Plaintiffs' license and removing harmful information are Plaintiffs' primary aims, and Plaintiffs' common law claims are ancillary thereto.  *See* Compl. at 5.  Granting Plaintiffs' request for an order restoring their license would require this Court to effectively wrest the proceedings from the OAL and enjoin it from considering the case.  Plaintiffs would also have the Court undo the order of the Law Division directing the Plaintiffs to refile their common law claims after the agency action is resolved.

In sum, the law and circumstances of this case support abstention.  The Court, therefore, will abstain from ruling on this action and dismiss it.  As a result, the Court does not reach the State Defendants' remaining arguments.

## IV.   CONCLUSION

For the reasons set forth above, the States Defendants' motion to dismiss is **GRANTED**. The State Defendants' motion is granted based on the Eleventh Amendment immunity and failure to name a person under Section 1983 with the exception of potential future injunctive relief as to Kazar in his individual capacity.  The State of New Jersey is thus entirely dismissed from this action.  Finally, the motion is further granted because the Court abstains under *Younger*.  An appropriate Order accompanies this Opinion.

Dated: August 4, 2022

John Michael Vazquez, U.S.D.J.

16